# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Ertl v. City of De Kalb*, 2013 IL App (2d) 110199**

| | |
|---|---|
| Appellate Court Caption | RUSSELL J. ERTL, Plaintiff-Appellee, v. THE CITY OF DE KALB, and THE BOARD OF POLICE AND FIRE COMMISSIONERS, Defendants-Appellants (The Board of Trustees of the De Kalb Firefighters' Pension Fund, Defendant). |
| District & No. | Second District<br>Docket No. 2-11-0199 |
| Filed | March 19, 2013 |
| Rehearing denied | April 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In protracted legal proceedings that started with a complaint seeking plaintiff's reinstatement to his position as a firefighter and back wages, included an appeal from an award of back wages and a mandate by the appellate court directing the trial court on remand to reinstate plaintiff, and resulted in the trial court allowing the award of back wages to stand without ordering plaintiff reinstated, the trial court erred in failing to find that a second suit filed by plaintiff seeking reinstatement and back wages was barred by *res judicata,* since the trial court, on remand from the first appeal, did not order plaintiff reinstated but, rather, simply let the initial award of back wages stand, the appellate court affirmed that judgment, and based on plaintiff's forfeiture of his right to reinstatement by failing to pursue that relief in the trial court or in an appeal, his second suit was barred. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 02-L-86; the Hon. Kurt P. Klein, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Yvette A. Heintzelman and Benjamin E. Gehrt, both of Clark Baird Smith LLP, of Rosemont, for appellants.

James T. Harrison and Kristen J. Farr, both of Harrison Law Offices, P.C., of Woodstock, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice Birkett specially concurred, with opinion.
Justice McLaren dissented, with opinion.

**OPINION**

¶ 1    This matter has been pending between the parties for many years. Plaintiff, Russell J. Ertl, was hired by the City of De Kalb as a firefighter in 1995 and terminated in 1996 without a hearing and without formal charges. On April 1, 1997, plaintiff filed the original case, seeking reinstatement and back wages based on breach of contract and the rules and regulations of the board of police and fire commissioners (Board). The trial court awarded plaintiff back pay and plaintiff appealed. We remanded, *inter alia*, with an order to reinstate plaintiff as a firefighter. *Ertl v. City of De Kalb*, 303 Ill. App. 3d 524, 530 (1999) (*Ertl I*). On remand, plaintiff petitioned for a rule to show cause, asking for reinstatement. Instead of ruling on plaintiff's filing, the case proceeded to trial on count I for breach of contract, and the trial court thereafter awarded plaintiff damages on the breach-of-contract claim and allowed the award of back pay to stand. The trial court did not order that plaintiff be reinstated. Plaintiff appealed and the City cross-appealed. However, this court dismissed plaintiff's appeal after he failed to file a timely appellate brief. On May 8, 2002, this court rendered its decision on the City's cross-appeal and affirmed the judgment of the trial court. *Ertl v. City of De Kalb*, No. 2-01-0145 (2002) (unpublished order under Supreme Court Rule 23) (*Ertl II*).

¶ 2    On August 26, 2002, plaintiff filed a second lawsuit, against the City, the Board, and the board of trustees of the De Kalb Firefighters' Pension Fund.[1] As in the original lawsuit, plaintiff sued the City and the Board (collectively, the City) for, *inter alia*, reinstatement and back wages. The City argued that principles of *res judicata* and *laches* precluded plaintiff from re-litigating this lawsuit. The trial court disagreed and, following a bench trial, awarded plaintiff damages, attorney fees, and prejudgment interest on plaintiff's breach-of-contract

---

[1]The board of trustees of the De Kalb Firefighters' Pension Fund is not a party to the appeal.

claim. The City argues on appeal that the trial court erred in finding that plaintiff's amended complaint was not barred by *res judicata* or *laches*. We agree with the City and reverse.

¶ 3                                                    I. BACKGROUND

¶ 4        Plaintiff was a firefighter for the City from October 10, 1995, to April 19, 1996, when he was terminated following his arrest for unlawful use of weapons (720 ILCS 5/24-1(a)(4) (West 1996)) and disorderly conduct (720 ILCS 5/26-1(a)(1) (West 1996)), and his failure to report for duty at the prescribed time the day after his arrest. Although notified of the termination and the reasons therefor, the Board did not conduct a hearing on plaintiff's termination. *Ertl I*, 303 Ill. App. 3d at 526.

¶ 5        Plaintiff filed his first suit seeking reinstatement and back wages, a three-count complaint, on April 1, 1997. After a stipulation of facts, plaintiff was awarded back pay of $1,928.31 on his allegation that the Board had violated its rules and regulations. *Id.* Plaintiff appealed the damages award and the trial court's dismissal of his breach-of-contract count. This court reversed in part, agreeing with plaintiff that "he should be reinstated until such time, if ever, that he is properly discharged," and remanded the cause:

> "for the reinstatement of count I [breach of contract], *plaintiff's reinstatement as a firefighter*, the awarding of any additional damages that may be appropriate, and for further proceedings consistent with this opinion." (Emphasis added.) *Id.* at 530.

¶ 6        On remand, plaintiff filed a petition for a rule to show cause why the City should not be held in contempt of court for failing to reinstate him as a firefighter. Although a hearing date was set, and the City was ordered to file a written response to the petition, no hearing was ever held. Instead, the remanded cause was set for a bench trial. During the bench trial, the following colloquy took place:

> "THE COURT: As I read this [*Ertl I*] and read before I came out here again, I interpreted that I have no right to substitute my judgment for whether [plaintiff] was rightfully or wrongfully terminated. That's the judgment, as I interpret it, of the Board of Police and Fire commissioners of the City of De Kalb. I'm only looking for if they did it okay?
>
> MS. ELY [City counsel]: So what you're saying is that we are trying today–for purposes of Count I, are we trying liability on Count I or are we just trying damages?
>
> THE COURT: I can't–you have to tell me if he was–I do not know. I expected to hear today whether he was terminated, whether there was a notice given and a hearing held and whether he was terminated.
>
> MS. ELY: Well–
>
> THE COURT: I have a sinking feeling in my stomach that that never occurred; am I right?"

¶ 7        At the bench trial conducted on remand, plaintiff testified that, after he was terminated, he accepted employment as a firefighter with the Pleasant View fire department on December 14, 1998. Plaintiff subsequently rejected an offer of employment from the Belvidere fire department because he was already employed with the Pleasant View fire department.

Following the bench trial, the trial court determined that plaintiff was entitled to his lost salary and pension contributions for the period of time between his termination in April 1996 and subsequent employment in December 1998 with the Pleasant View fire department. The trial court awarded plaintiff damages of $79,108.72 on the breach-of-contract claim, which included $8,047.77 in pension contributions. The trial court's judgment order of January 5, 2001, did not address reinstatement.

¶ 8   Both plaintiff and the City appealed, although plaintiff's appeal was later dismissed for failure to file an appellate brief. The City did not raise the issue of reinstatement in its appeal. Plaintiff filed with this court a petition for a rule to show cause, requesting that the City be held in contempt for failure to reinstate him; this petition was denied in September 2001. On October 12, 2001, the City paid plaintiff the judgment amount plus postjudgment interest.

¶ 9   We affirmed the trial court's judgment on issues relating to evidence, back pay, and lost pension contributions. See *Ertl II*, No. 2-01-0145 (2002) (unpublished order under Supreme Court Rule 23). As a final matter, we noted that, because plaintiff's appeal had been dismissed, we lacked jurisdiction to consider his contention that the trial court should have awarded him additional damages for lost sick leave, vacation pay, and other fringe benefits. *Id.* at 9-10.

¶ 10   On August 26, 2002, almost four months after this court's ruling in *Ertl II*, plaintiff filed the present, two-count complaint against the City, alleging breach of contract and violation of the Board's rules and regulations. The breach-of-contract claim sought the same remedies as the original suit in *Ertl I*, in which plaintiff sought reinstatement and back wages. Plaintiff also sought "additional damages since the January 5, 2001[,] judgment order." The City moved to dismiss pursuant to section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2002)), raising the issues of *res judicata* and *laches*. The trial court denied the motion to dismiss in April 2003. Eventually, plaintiff filed an amended complaint, adding the board of trustees of the De Kalb Firefighters' Pension Fund as a defendant in count III for a violation of the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2010)), and adding a claim for *mandamus* (count IV) against all defendants, seeking reinstatement, credit for all creditable service, and back pay.

¶ 11   In its opening statement at trial, the City addressed our opinion in *Ertl I* by noting "that there had been an appeal of the matter which reflected the plaintiff had not been properly terminated and ordered the City to reinstate him and, if it chose, to properly terminate him." Following trial, the trial court began its oral ruling as follows:

> "This matter comes on for ruling today. I want to preface my remarks by letting me say this: Some think a judge can do whatever he wants to do. That's not true. Judges have to follow the law. When they don't, problems are amplified, not resolved and cases drag on costing everybody more[,] and emotional distress.
>
> This is a very unconventional case. It's been to the Appellate Court three times. And I'm the second trial judge assigned during the past thirteen years that this case is pending. *Over eleven years ago the Appellate Court ordered the plaintiff [sic] to reinstate Mr. Ertl with back benefits. To date that has not happened.*
>
> How can this happen? I don't know. I don't understand how a government body can

-4-

ignore a mandate from the Appellate Court for over eleven years. This case appears to be driven by personalities and not by the rule of law. I understand that Mr. Ertl's personality is not appealing to most people. I understand that City administrators were offended by defendant's [*sic*] defiant, unremorseful, in-your-face attitude. However, none of these considerations trump the rule of law." (Emphasis added.)

¶ 12    The trial court found in favor of plaintiff and against the City on the breach-of-contract claim (count I), awarding $170,540 in damages, almost $29,000 in attorney fees, and approximately $62,000 in prejudgment interest. The trial court dismissed counts II through IV as to all defendants. The trial court noted in its dismissal of count III that "[p]laintiff had not been fully reinstated" and that the issue raised therein was "not ripe for adjudication." As to the *mandamus* claim (count IV), the trial court's written order specifically provided that "the Appellate Court has previously ordered that [p]laintiff be fully reinstated by the [City]." When asked by plaintiff's counsel whether it was ordering plaintiff reinstated, the trial court responded, "I am not ordering him reinstated. *** The Appellate Court ordered him reinstated. The Appellate Court doesn't need me to say that they were right and he should be reinstated."

¶ 13    The City filed a motion for reconsideration, which the trial court denied on February 1, 2011. This timely appeal followed.


¶ 14                                  II. ANALYSIS
¶ 15                                  *Res Judicata*
¶ 16    The City first contends that plaintiff's claims were barred by the doctrine of *res judicata*. According to the City, the trial court's judgment of January 5, 2001 (on remand from this court's judgment in *Ertl I*), and this court's subsequent affirmance of that judgment in *Ertl II*, ended plaintiff's litigation involving his termination from the fire department, and neither the trial court nor this court ordered that plaintiff be reinstated; all that was required was the execution of the judgment, which the City paid.

¶ 17    "Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994). As *res judicata* involves a question of law, we will give this issue *de novo* review. *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 512 (2010).

¶ 18    The parties do not dispute the first and third requirements. Rather, they take issue over whether an identity of cause of action exists. To determine whether an identity of cause of action exists (as to the breach-of-contract claims) such that *res judicata* applies, we apply the

transactional analysis. See *River Park*, 184 Ill. 2d at 310-11. Under this analysis, we look to the facts that give rise to plaintiff's right to relief; separate claims are considered the same cause of action for *res judicata* purposes if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *Id.*

¶ 19　　The City contends that there is an identity of cause of action. Both the original complaint and the present complaint sound in breach of contract stemming from plaintiff's termination of employment on April 19, 1996. Plaintiff asserts that there is no identity of cause of action. Plaintiff argues that *Ertl I* covered a different period of time than the current lawsuit because he now seeks to recover additional contract damages that he incurred after the January 5, 2001, final judgment. Plaintiff notes that the present complaint alleges additional facts about plaintiff's court-ordered reinstatement and the City's noncompliance with that order, which caused different damages than those covered in the original suit and established the City's intentional breach in the present suit because of its alleged "defiance of the Appellate Court's reinstatement of the Plaintiff." Plaintiff believes that, had the City reinstated him, as this court had ordered, the damages that he seeks herein would not have arisen.

¶ 20　　The problem with plaintiff's argument, however, is twofold. Initially, it rests on plaintiff's, as well as the trial court's, incorrect interpretation of this court's mandate regarding plaintiff's reinstatement. The second problem is plaintiff's abandonment of his right to secure reinstatement.

¶ 21　　"The mandate of a court of review is the transmittal of the judgment of that court to the circuit court, and revests the circuit court with jurisdiction." *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 304 (1981). Where the reviewing court's directives are specific, the court to which a cause is remanded is under a positive duty to enter an order or decree in accordance with the directions contained in the mandate; precise and unambiguous directions in a mandate must be obeyed. *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 323 Ill. App. 3d 190, 196 (2001). "[I]t is not required that a reviewing court state specific directions in an order reversing a judgment and remanding a cause. In such a case, it is then the duty of the court to which the cause is remanded to examine the reviewing court's opinion and to proceed in conformity with the views expressed in it. [Citations.] '[T]hen, of course, the content of the opinion is significant.' *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308 (1981)." *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 353 (2002). If specific directions are not given, the trial court should examine the opinion to determine what further proceedings would be consistent with the opinion. *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28. Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction. *Id.* When the trial court's action on remand is inconsistent with the reviewing court's mandate, it is subject to reversal on appeal. *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 56 (2005). When a reviewing court reverses and remands a cause with a specific mandate, the only proper issue on a second appeal is whether the trial court's order is in accord with the mandate. *Quincy School District No. 172 v. Illinois Educational Labor Relations Board*, 366 Ill. App. 3d 1205, 1210 (2006).

¶ 22　　The mandate in *Ertl I* stated:

"BE IT REMEMBERED, that, to wit: On the 18th day of March, 1999, a Decision of the aforementioned Court was entered of record and in accordance with the views expressed in the attached Decision the judgment of the trial court is Reversed and Remanded with Directions."

The mandate itself did not contain specific directions; therefore, the trial court was required to examine the opinion to determine what further proceedings would be consistent with the opinion. See *Fleming*, 2012 IL App (1st) 103475-B, ¶ 28. Within the opinion, we stated that we agreed "with plaintiff that he should be reinstated until such time, if ever, that he is properly discharged"; and "[t]he judgment of the circuit court of De Kalb County is reversed in part, and the cause is remanded for *** plaintiff's reinstatement as a firefighter ***. Reversed in part and remanded with directions." *Ertl I*, 303 Ill. App. 3d at 530.

¶ 23    We have no difficulty interpreting this straightforward direction. In construing the language, matters that are implied may be considered embraced by the mandate. *PSL Realty*, 86 Ill. 2d at 308. Although we agreed that plaintiff should be reinstated until such time, if ever, that he is properly discharged, at no time did we enter a self-enforcing order reinstating plaintiff as a firefighter or order the City to reinstate plaintiff. Rather, we remanded the case to the trial court to order plaintiff's reinstatement as a firefighter and to hold further proceedings to determine whether any additional damages should be awarded. *Ertl I*, 303 Ill. App. 3d at 529. In fact, we repeated this order in *Ertl II*, when we stated that "this court remanded the case for reinstatement of count I, for plaintiff's *reinstatement as a firefighter*, and for the award of any additional damages." (Emphasis added.) *Ertl II*, slip op. at 1. Contrary to the dissent's suggestion, we are not adding language not present in the opinion. In *Ertl I*, we remanded the case to the trial court for further action. We did not remand the case to the City for further action. Even plaintiff's attorney acknowledged during oral argument that our order did not state that the City was to reinstate plaintiff *instanter* and instead remanded the cause to the trial court to enter an order to reinstate plaintiff. (Indeed, on no fewer than five occasions during oral argument, plaintiff's attorney conceded that the trial court was ordered to reinstate plaintiff. This is hardly "cherry picking" statements that we wish to highlight.) If we had entered a self-enforcing order of reinstatement, why would we then deny plaintiff's petition for a rule to show cause that sought relief for the City's failure to reinstate him? Once we agreed that plaintiff should be reinstated, this established the law of the case: plaintiff had the right to be reinstated. It was the responsibility of the trial court to follow the specific directions of our mandate. When the trial court failed to include an order of reinstatement in its judgment order, plaintiff should have appealed and raised the issue of whether the trial court complied with our mandate. The fact that the City reinstated plaintiff in February 2011 was simply its attempt to mitigate its damages following the trial court's rulings.

¶ 24    However, this does not end the problem, because, regardless of whether plaintiff had the right to be reinstated, or even if we had entered a self-enforcing order of reinstatement or had ordered the City to reinstate plaintiff, plaintiff filed a petition for a rule to show cause against the City for its failure to reinstate him, but he never attempted to have it heard. Plaintiff then, for whatever reason, never requested reinstatement at trial, in a posttrial motion, or in an appeal. These actions were contrary to the dissent's bald statement that plaintiff acted as

though the City was required to reinstate him pursuant to *Ertl I*. Perhaps plaintiff never sought reinstatement because he had gained new employment with the Prairie View fire department at the time, which we presume he found preferable. Whatever the case, *Ertl II* contained no discussion of the trial court's failure to carry out this court's mandate, and clearly plaintiff abandoned or forfeited his attempt to secure his right to reinstatement. Since plaintiff abandoned his right to be reinstated or forfeited that right, we agree that *res judicata* bars plaintiff's suit.

¶ 25    Plaintiff contends that the present suit covers a different period of time, from the original judgment for plaintiff on January 5, 2001, until the final judgment on August 26, 2010. Plaintiff alleges that the City's continuing noncompliance with our mandate to reinstate plaintiff gave rise to plaintiff's subsequent claims for additional damages when the mandate was not followed. We fail to see how plaintiff could assert that he was entitled to additional damages. The City paid plaintiff damages up to January 5, 2001, to remedy his wrongful termination. Plaintiff alleges that the City failed to reinstate him and that he was entitled to damages from January 5, 2001, through August 26, 2010. However, plaintiff has not been harmed and there has been no breach of contract, because plaintiff never attempted to enforce his right to reinstatement. Plaintiff is trying to equate wrongful termination with the trial court's failure to reinstate him. See *Doherty v. Schipper & Block*, 250 Ill. 128, 134 (1911) ("an action for the breach of the contract of employment growing out of the wrongful discharge of the appellant *** all damages resulting from such breach must be recovered in one action, and that after one recovery has been had that recovery is a bar to all future actions based upon the contract of employment").

¶ 26    We also reject plaintiff's argument that there is no identity of cause of action as plaintiff alleges new facts based on the City's "intentional breach of contract" because of its "defiance" of this court's reinstatement order. As we previously held, the City did not defy this court's reinstatement order; rather, the trial court did not adhere to our remand instruction. Regardless, plaintiff never appealed the trial court's omission of a reinstatement order, called his petition for rule for a hearing, or appealed what he believed was the City's failure to reinstate him. This is a matter that could have been decided in *Ertl II*. Plaintiff failed to protect his right to reinstatement when he failed to file a timely brief appealing the trial court's judgment in *Ertl II*. In passing, we observe also that fault is irrelevant in a breach-of-contract claim. See *J.F. Equipment, Inc. v. Owatonna Manufacturing Co.*, 143 Ill. App. 3d 208, 220 (1986). Because we find as a matter of law that the elements of *res judicata* apply, the trial court erred by failing to dismiss plaintiff's lawsuit.

¶ 27                                    *Laches*

¶ 28    Although we need not reach this issue, we agree with the City that the doctrine of *laches* also could have barred plaintiff from pursuing the equitable remedy of reinstatement. The doctrine of *laches* is an equitable doctrine based on the maxim that "equity aids the vigilant and not those who slumber on their rights." *Tower Oil & Technology Co. v. Buckley*, 99 Ill. App. 3d 637, 645 (1981). In order to invoke the doctrine, it is necessary to establish "lack of due diligence by the party asserting the claim and prejudice to the opposing party." *Van*

*Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89 (1994). Principles of *laches* are applied when a party's failure to timely assert a right has caused prejudice to the adverse party. *Tully v. State*, 143 Ill. 2d 425, 432 (1991).

¶ 29    The City would suffer prejudice if ordered to reinstate plaintiff at this juncture, as the record indicates that plaintiff was replaced by the City several years ago. As stated above, following plaintiff's first appeal on his 1997 complaint, we reversed the dismissal of the breach-of-contract count of the complaint and remanded the case for reinstatement of plaintiff. That opinion was issued on March 18, 1999. Nineteen months later, plaintiff filed a petition for a rule to show cause in the trial court, requesting the trial court to hold the City in contempt of court for failure to reinstate plaintiff. However, in the trial court, plaintiff never noticed the petition for hearing. Notwithstanding, the trial court entered an order requiring the City to file a written response to the petition. The trial court also set a hearing date on the petition. However, no hearing on the petition was held and the trial court entered an order setting the matter for a bench trial. The matter was eventually tried on January 4, 2001. At trial, plaintiff did not present any evidence or make any argument regarding the issue of his reinstatement or his petition for a rule to show cause. He requested only monetary damages as his chosen remedy. The trial court thereafter entered a judgment order only for monetary damages in favor of plaintiff on January 5, 2001. The order did not address the issue of plaintiff's reinstatement or plaintiff's petition for a rule to show cause. Plaintiff's appeal from that order was dismissed because he failed to file a brief after having received more than one extension to do so. Although plaintiff did file a petition for a rule to show cause with this court, requesting that the City be held in contempt for failure to reinstate him, by the time he did so he had forfeited that right.

¶ 30    Plaintiff had ample opportunity to enforce his right to reinstatement as a firefighter. Plaintiff did not seek the equitable remedy of reinstatement until 1½ years after our initial opinion in *Ertl I*. He then failed to notice the petition for hearing. He failed to raise the issue at trial. He failed to file a brief in the second appeal, where he could have raised the issue of reinstatement. Plaintiff could have avoided the present lawsuit if he had asked the trial court on remand from *Ertl I* to amend its January 5, 2001, judgment to include an order of reinstatement or had pressed his appeal of that judgment. Instead, he sat on his rights. By the time that we decided *Ertl II*, there was no indication that plaintiff had any interest in reinstatement. Plaintiff had already started working as a fireman elsewhere. The City had paid the judgment and thought the litigation had ended. Yet, on August 26, 2002, six years after his termination, plaintiff filed the present case, his second lawsuit against the City for a breach of contract, which had already been determined.

¶ 31    Plaintiff's unjustifiable delay prejudiced the City. If plaintiff had diligently pursued his rights or made an effort to be reinstated in the weeks or months following the judgment in *Ertl I*, the City and the taxpayers of De Kalb could have avoided the judgment and costs in this case. See *Bill v. Board of Education*, 351 Ill. App. 3d 47, 57 (2004).

¶ 32    The dissent's entire position is predicated on the proposition that this court in *Ertl I* entered a self-effectuating order to the City to reinstate plaintiff as opposed to remanding the cause to the trial court to enter such an order. The fact that the dissent's view of the order differs from ours does not necessarily make our decision absurd, inexplicable, or a perversion

of any legal concept. Invective and hyperbole are no substitute for sound legal analysis.

¶ 33    For these reasons, the judgment of the circuit court of De Kalb County is reversed.

¶ 34    Reversed.

¶ 35    JUSTICE BIRKETT, specially concurring.

¶ 36    The dissent takes issue with our interpretation of this court's decision and mandate in *Ertl I*. My colleague Justice McLaren was the author in *Ertl v. City of DeKalb*, 2012 IL App (2d) 120514-U (*Ertl III*), which was decided on July 31, 2012. Justice Bowman and I concurred in this court's order reversing the trial court's denial of a stay of proceedings pending arbitration of certain issues related to Ertl's reinstatement. In *Ertl III* we said that *Ertl I*, *inter alia*, "*directed the trial court to order plaintiff's reinstatement as a firefighter.*" (Emphasis added.) *Ertl III*, 2012 IL App (2d) 120514-U, ¶ 3.

¶ 37    Our interpretation of *Ertl I* is identical to the description in *Ertl III*. The mandate in *Ertl I* revested the trial court with jurisdiction to carry out this court's directions, which included entering an order directing the City of De Kalb to reinstate Ertl. On August 23, 2012, at oral argument in this case, Justice McLaren, in summary, told Ertl's counsel that if our mandate in *Ertl I* ordered the trial court to do something regarding reinstatement "you're out of the box." I could not agree more.

¶ 38    JUSTICE McLAREN, dissenting.

¶ 39    I agree that *res judicata* applies in this case. However, the application of *res judicata* does not prevent Ertl from seeking damages in this case; it prevents the City from claiming that it is not required to reinstate Ertl "until such time, if ever, that he is properly discharged," and it prevents Ertl from claiming that the trial court can and should order the City to reinstate him. The majority now approves a proposition that no one, including the City, approved of when this court ordered Ertl's reinstatement 14 years ago. Not only was the proposition never approved, but when the trial court determined and declared the exact *opposite* proposition, neither party contested that determination on appeal. Therefore, I must dissent.

¶ 40    The majority makes the bald assertion that, in *Ertl I*, "we remanded the case to the trial court to order plaintiff's reinstatement as a firefighter and to hold further proceedings to determine whether any additional damages should be awarded." *Supra* ¶ 23. However, we did not remand the cause for Ertl to *apply* for reinstatement, or for "*consideration of the issue of reinstatement* of the plaintiff to his previous position" (emphasis added), as the City's counsel asserted at oral argument, or for the trial court to *hold a hearing* on reinstatement, or for the trial court to *order* someone to reinstate Ertl; we remanded the cause for his reinstatement as a firefighter, and, as we explained, that reinstatement was to last "until such time, if ever, that he is properly discharged." *Ertl I*, 303 Ill. App. 3d at 530. The majority claims to have "no difficulty" in "interpreting this straightforward direction" from our decision in *Ertl I*. *Supra* ¶ 23. However, after acknowledging that the mandate "did not

-10-

contain specific directions" and that "the trial court was required to examine the opinion to determine what further proceedings would be consistent with the opinion" (*supra* ¶ 22), the majority then concludes that "we remanded the case to the trial court to order plaintiff's reinstatement as a firefighter" and that "[i]t was the responsibility of the trial court to follow the *specific directions of our mandate*." (Emphasis added.) *Supra* ¶ 23. First, did the mandate contain clear directions? If so, examination of the opinion was unnecessary. Second, in any event, neither the mandate nor the opinion contained language ordering "*the trial court to order* plaintiff's reinstatement as a firefighter and to hold further proceedings to determine whether any additional damages should be awarded." (Emphasis added.) See *id.* Why does the majority add language not present in the opinion and mandate?

¶ 41   On remand, the trial court understood that the City, not it, was required by this court, and had the power, to reinstate Ertl:

"THE COURT: As I read this [*Ertl I*] and read before I came out here again, I interpreted that I have no right to substitute my judgment for whether [plaintiff] was rightfully or wrongfully terminated. That's the judgment, as I interpret it, of the Board of Police and Fire commissioners of the City of De Kalb. I'm only looking for if they did it okay?

MS. ELY [City counsel]: So what you're saying is that we are trying today–for purposes of Count I, are we trying liability on Count I or are we just trying damages?

THE COURT: I can't–you have to tell me if he was–I do not know. I expected to hear today whether he was terminated, whether there was a notice given and a hearing held and whether he was terminated.

MS. ELY: Well–

THE COURT: I have a sinking feeling in my stomach that that never occurred; am I right?"

Apparently, the City agreed; during the trial on remand, the trial court described the actions of the City:

"So, in fact, Ms. Ely [City counsel], I have said to you before–if you want to bring him back in here–Mr. Matekaitis [former City counsel] came to me and asked me to continue this trial last fall, telling me he needed to conduct a hearing before the Board of Police and Fire Commissioners. Maybe you don't agree with what he said, but he came to me and made that request in front of me, Mr. Gallagher [Ertl's counsel], and I told you that a couple of weeks ago."

Why would the City request a continuance of trial in order to conduct a hearing before the Board of Police and Fire Commissioners if it did not believe that it needed to terminate Ertl? Why would it need to terminate Ertl if he had not been reinstated?

¶ 42   That the trial court and the City continued to understand the issue in this manner was evidenced during the trial in this case. The City's attorney told the trial court in this case, "The Appellate Court's opinion said that we were supposed to reinstate the plaintiff. We did not do that." In the City's opening statement at trial, counsel noted "that there had been an appeal of the matter which reflected the plaintiff had not been properly terminated and

*ordered the City to reinstate him* and, if it chose, to properly terminate him." (Emphasis added.) See *supra* ¶ 11. After trial, the trial court began its oral ruling by stating:

> "This matter comes on for ruling today. I want to preface my remarks by letting me say this: Some think a judge can do whatever he wants to do. That's not true. Judges have to follow the law. When they don't, problems are amplified, not resolved and cases drag on costing everybody more[,] and emotional distress.
>
> This is a very unconventional case. It's been to the Appellate Court three times. And I'm the second trial judge assigned during the past thirteen years that this case is pending. *Over eleven years ago the Appellate Court ordered the plaintiff [sic] to reinstate Mr. Ertl with back benefits. To date that has not happened.*
>
> How can this happen? I don't know. I don't understand how a government body can ignore a mandate from the Appellate Court for over eleven years. This case appears to be driven by personalities and not by the rule of law. I understand that Mr. Ertl's personality is not appealing to most people. I understand that City administrators were offended by defendant's [sic] defiant, unremorseful, in-your-face attitude. However, none of these considerations trump the rule of law." (Emphasis added.)

¶ 43     The trial court noted that "[p]laintiff had not been fully reinstated" and, in its written order, specifically provided that "the Appellate Court has previously ordered that [p]laintiff be fully reinstated by the [City]." The trial court also informed Ertl's counsel that "I am not ordering him reinstated. *** The Appellate Court ordered him reinstated. The Appellate Court doesn't need me to say that they were right and he should be reinstated."

¶ 44     The trial court did not order Ertl reinstated after the trial on remand. The trial court understood that it did not have the prerogative to reinstate Ertl; both the power *and the duty* to do so rested in the City. This is evident in the court's pronouncements, rulings, judgment, and award of punitive damages. The City was also aware of this fact, as is evidenced by its admissions below that it had been ordered to reinstate Ertl. Ertl's appeal in *Ertl II* was dismissed by this court, and the City's appeal neither mentioned nor contested the trial court's order regarding reinstatement. Neither *Ertl I* nor *Ertl II* was ever reviewed, let alone reversed, by our supreme court.

¶ 45     The law-of-the-case doctrine, which applies to issues both of law and of fact, holds that such issues decided on a previous appeal are binding on the trial court on remand as well as on the appellate court in subsequent appeals. *Bjork v. Draper*, 404 Ill. App. 3d 493, 501 (2010). In addition, a final and appealable trial court order that has been left undisturbed by the appellate court becomes the law of the case. *Ericksen v. Rush-Presbyterian-St. Luke's Medical Center*, 289 Ill. App. 3d 159, 168 (1997). This doctrine protects the settled expectations of the parties, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings litigation to an end. *Id.* The City did not file a petition for leave to appeal our judgment in *Ertl I*. The trial court, which concluded that the City was already required to reinstate Ertl, made its rulings and did not order the City to reinstate Ertl. As the law of the case, this court's order that the City reinstate Ertl "until such time, if ever, that he is properly discharged" (*Ertl I*, 303 Ill. App. 3d at 530) was binding in the trial court on remand, on this court in *Ertl II*, in the trial

held in this case, and in this appeal. Further, the trial court's determination that the City, not the court, was required to reinstate Ertl was never timely challenged on appeal. The City's claim that this court's order is not binding on it is meritless.

¶ 46    The law of the case is that Ertl was to be reinstated; it is not, as the majority claims, that Ertl "had *the right* to be reinstated." (Emphasis added.) *Supra* ¶ 23. The trial court, the City, and Ertl *all* acted as though the City was required by our opinion in *Ertl I* to reinstate Ertl "until such time, if ever, that he is properly discharged." This is a reasonable interpretation. Pursuant to article IV of the contract between the City and the De Kalb International Association of Firefighters, Local 1236, probationary employees may be terminated by the "Fire Department," a phrase that, per the contract, "shall be synonymous with the City of De Kalb." As we noted in *Ertl I*, "On April 19, [1995], *the City* terminated plaintiff's employment without explanation." (Emphasis added.) *Ertl I*, 303 Ill. App. 3d at 526. The City terminated Ertl; no one but the City could "un-terminate" or reinstate him. Yet the majority finds that "the City did not defy this court's reinstatement order; rather, the trial court did not adhere to our remand instruction." *Supra* ¶ 26.

¶ 47    The majority is rather selective in its use of statements by Ertl's counsel to support its conclusion. The majority asserts that "[e]ven plaintiff's attorney acknowledged during oral argument that our order did not state that the City was to reinstate plaintiff *instanter* and instead remanded the cause to the trial court to enter an order to reinstate plaintiff." *Supra* ¶ 23. Perhaps the majority could also address Ertl's counsel's assertion (at approximately 18:51 to 19:00 of the recorded argument) that, "In this case, it's fairly clear that Mr. Ertl was reinstated by the appellate court in 1999, in its order." Or counsel's response (at approximately 20:19) to a question as to why no one at the retrial brought up the fact that Ertl needed to be reinstated: "Well, that's because the appellate court had already ruled. The appellate court had already ruled on this." Or Ertl's assertions on page 16 of his brief that "THE CITY WAS ORDERED TO REINSTATE THE PLAINTIFF" and "Although the Appellate Court did remand the case, it also clearly ordered Plaintiff's reinstatement; to claim otherwise is to ignore the facts." Ertl's counsel made contradictory and, at times, unclear statements regarding reinstatement ("My argument to you, Judge, is that the appellate court reinstated Mr. Ertl, issued a mandate to the trial court, which the trial court failed to abide by, parties failed to abide by, and everyone failed to abide by."), but this court cannot cherry-pick so blatantly the statements that it wishes to highlight.

¶ 48    In any event, Ertl's counsel's[2] characterization of our decision in *Ertl I* at an oral argument more than 13 years after we issued our decision is both irrelevant and a *non sequitur*. The judgment in this case was interpreted years ago by the trial court to require the City to reinstate Ertl. Appellate counsel's arguments now (which are, in any event, contradicted by other of his statements) are not judicial admissions that annul Ertl's claim that the City failed to follow this court's order to reinstate Ertl.

¶ 49    As a matter of law, the City was to reinstate Ertl "until such time, if ever, that he is properly discharged." Implicit in this order is that the City would pay Ertl the wages due to

---

[2]I must note that counsel on this appeal was not counsel in *Ertl I*.

him as a firefighter until, if ever, he was terminated. However, the City failed to reinstate him and did not pay him. Ertl had a choice of remedies for the City's failure. He could have petitioned for a rule to show cause, as he did in the trial court (without resolution) and also in this court (which was denied), seeking sanctions against the City for its failure to reinstate him. He could also, as he did here, seek compensatory damages for the payments that he would have received had the City reinstated him. In this case, those damages accumulated until the time of trial, as the City did not reinstate him and, consequently, did not terminate him. This is not Ertl slumbering on his rights such that *laches* should apply. This is the City sitting on its hands, refusing to comply with the orders of this court and the trial court, such that damages should continue to accumulate until the City follows the orders and the interpretation of the trial court and gives Ertl a proper hearing to terminate his employment. The City has no basis to claim that *laches* applies. He who seeks equity must do equity. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009). "A court of equity will not confer its equitable relief upon a party seeking its aid, unless he will acknowledge and concede all the equitable rights and dividends justly belonging to the adversary party, growing out of or necessarily involved in the subject-matter of the controversy. [Citation.]" *Wenham v. Mallin*, 103 Ill. App. 609, 613 (1902). The City acknowledged on the record during trial in this case that this court "ordered the City to reinstate [Ertl]" and that "The Appellate Court's opinion said that we were supposed to reinstate the plaintiff. We did not do that." These acknowledgments came 10 years after our disposition in *Ertl I* and 7 years after Ertl filed his initial complaint in this case. The City acknowledges that it ignored an appellate court order for 10 years and the majority finds that the City has acknowledged and conceded "all the equitable rights and dividends justly belonging to" Ertl? What "equity" has the City done by intentionally ignoring the orders of this court and the trial court? The City acknowledges its 10-year delay in following this court's order and the majority determines that, because of *Ertl's* "unjustifiable delay," *laches* should preclude Ertl's recovery. *Supra* ¶ 31. The majority's conclusion that the City's inequitable delay should assist the City in its claim for *laches* is absurd.

¶ 50    The majority asks, "If we had entered a self-enforcing order of reinstatement, why would we then deny plaintiff's petition for a rule to show cause that sought relief for the City's failure to reinstate him?" *Supra* ¶ 23. Ertl had chosen and received from the trial court his remedy of compensatory damages that had accrued *to that point*. This court affirmed the grant of this remedy in *Ertl II*; we could not additionally grant him his unchosen remedy of sanctions for failing to reinstate him. However, the majority uses its rhetorical question as a basis to deny Ertl the relief that he sought and to which he was entitled because he failed to seek enforcement of the relief that he had not chosen. In any event, a court's decision not to issue a rule to show cause or find a party in contempt does not mean that the underlying order is vacated. If a trial court declines to issue a rule to show cause or to hold a father in contempt for his failure to pay child support, the arrearage does not disappear, nor do the future obligations cease to accrue. Here, the City's obligation to reinstate Ertl was not vacated or affected in any way by the trial court's failure to rule on his petition for a rule to show cause or this court's denial of his later petition, nor was the accrual of compensatory damages "until such time, if ever, that he is properly discharged." The majority's rhetorical

-14-

question is a red herring.

¶ 51    I note that the City attempted to reinstate Ertl in 2010 and did, in fact, notify Ertl on February 4, 2011, that he was to be reinstated on February 10 of that year. See *Ertl III*, 2012 IL App (2d) 120514-U. Is this not consistent with the trial court's interpretation of the *Ertl I* mandate? How can the City argue that it was not required to reinstate Ertl and that *res judicata* and *laches* apply to prevent Ertl's claims when the City has, in fact, reinstated him?

¶ 52    The inability of any party other than the City to reinstate Ertl is demonstrated by the proceedings in *Ertl III*, which involved questions regarding Ertl's pay and status (probationary versus non-probationary) upon reinstatement. See *id.* ¶ 4. If the trial court were required to order Ertl's reinstatement, apparently it would have been required to make such decisions and include them in its order. Further, the majority addresses only half of the *Ertl I* directive; it never addresses "until such time, if ever, that he is properly discharged." Logic would dictate that whoever was ordered to reinstate Ertl would also be charged with the authority to "properly discharge" him. Again, logic would dictate that this party would be the City. The trial court is just as ill-suited to this project as it was to reinstatement. What type of proceeding would be employed to discharge Ertl–declaratory judgment? At best, the majority can be read to provide an oblique hint at its interpretation of the discharge requirement: by not obtaining a ruling on his petition for a rule to show cause in the trial court, Ertl abandoned the petition and, in essence, discharged himself such that no further damages would accrue. However, such a theory makes no sense in light of the actual law and facts of this case.

¶ 53    The majority finds that "the trial court did not adhere to our remand instruction." *Supra* ¶ 26. It appears that, regardless of what the trial court did, the majority fails to follow the law of the case and fails to enforce a trial court order that has not been appealed as erroneous. For the majority to do so at this juncture is a perversion of the concept of *res judicata*. It is inexplicable how the majority can claim, in light of the record and in the face of the City's admissions, that the City did not know or understand that it was the party required to reinstate Ertl and that the burden was, instead, on Ertl. The majority is rewarding the City despite its steadfast refusal to even attempt to reinstate Ertl until 2010. Until such time as the City demanded that Ertl return to work, he was entitled to the relief that he sought. The majority's determination that Ertl was required to seek other forms of relief or lose his right to compensatory damages is both unprecedented and wrong.

¶ 54    I would also like to point out that, if the City had diligently followed this court's opinion and the trial court's interpretation thereof and made an effort to reinstate Ertl in the weeks or months following the judgment in *Ertl I*, the City and the taxpayers of De Kalb could have avoided the judgment and costs in this case.