NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190118-U

NO. 4-19-0118

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 22, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CAROLYN WEBB, | ) | Appeal from |
| Petitioner-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| RICHARD LIGHTSEY, | ) | No. 12F524 |
| Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HOLDER WHITE delivered the judgment of the court. Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court did not abuse its discretion in recalculating respondent's income and ordering retroactive child support to the date the petition to modify was filed.

¶ 2    In January 2017, the trial court entered an order increasing the child support obligation owed by respondent, Richard Lightsey.  The January 2017 order also resolved a request for retroactive child support made by petitioner, Carolyn Webb.  On appeal, this court found mathematical errors in the trial court's calculations that required remand for a recalculation of respondent's income.  Following a September 2018 hearing on remand, the trial court recalculated respondent's income, found a downward deviation appropriate, and entered an order setting respondent's child support obligation and ordering retroactive support to the filing of petitioner's motion to modify child support.

¶ 3        Respondent appeals, arguing the trial court erred by (1) ignoring this court's mandate to recalculate respondent's income, (2) awarding retroactive child support in amounts not supported by the evidence or applicable law, and (3) interpreting this court's mandate as depriving the trial court of discretion in awarding retroactive child support. For the following reasons, we affirm the trial court's judgment.

¶ 4                             I. BACKGROUND

¶ 5        In September 2014, petitioner filed a petition for modification of child support, alleging respondent was employed and paying significantly less than the statutory child support minimum guidelines.

¶ 6               A. Hearing on Petition for Modification of Child Support

¶ 7        The trial court held a hearing on the petition for modification on three nonconsecutive days in 2016. In the first appeal, this court summarized the relevant evidence as follows:

> "Respondent testified he retired from 3M in August 2012, after working for the company for 32 years. As part of his severance package, respondent received $400,000, of which $100,000 was placed in an account maintained at Wells Fargo. While still employed with 3M, respondent earned a base annual salary of approximately $250,000 plus an additional performance-based bonus. Respondent testified he was also awarded stock options in his last 15 years at 3M because he met his targets. There were two different types of stock options: restricted stock and general stock. According to respondent, restricted stock had to

mature before it could be sold. Petitioner's exhibit No. 22 contained copies of respondent's long-term incentive plan, including (1) general stock options granted in 2010, 2011, and 2012, which vested in 2011 through 2015; and (2) restricted stock options granted in 2010, 2011, and 2012, which vested in 2013 through 2015.

Respondent acknowledged he signed a financial affidavit prior to the trial court's October 2013 order. In the 2013 affidavit, respondent identified his pension as the source of his $6643 gross monthly income and testified it was '[t]he only source of reoccurring income.' The affidavit further disclosed a Fidelity Investments (Fidelity) brokerage account in the amount of $554,000. However, the affidavit did not list any income from investments or withdrawals from the Fidelity account. Counsel for petitioner asked whether it was true respondent had withdrawn $230,000 from the Fidelity account in 2013. Although respondent could not recall the precise amount, he acknowledged he sold some stock to cover his monthly expenses.

Respondent's 2013 tax return identified approximately $230,000 in wages, salaries, and tips. According to respondent, that income was from his 3M stock options. The 2013 tax return also identified $3424 in dividends, $18,915 in capital gains, and $79,716 from his pension. Respondent's gross income in 2013

was $332,911. Other than identifying the Fidelity brokerage account, the 2013 financial affidavit did not disclose the $230,000 withdrawn from the Fidelity account to cover respondent's expenses.

A November 2014 financial affidavit also listed only the $6643 monthly pension as respondent's gross income. However, respondent acknowledged he continued to withdraw between $10,000 and $30,000 per month from his Fidelity account, which he did not list as income on his financial affidavit because it was not 'reoccurring.' The 2014 affidavit indicated respondent had no employment at the time. Respondent was working as a consultant for Catalyst, a start-up founded by two personal friends. Respondent did not receive compensation for this consulting work, but Catalyst reimbursed him for any expenses he incurred. Bank records show respondent withdrew $61,494 from his Fidelity account from September through December 2014.

Respondent's 2015 federal income tax return shows an adjusted gross income of $289,881. The tax return showed respondent received $182,188 in wages and salary from his 'Fidelity stock options from 3M.' Bank records show respondent withdrew $221,659 from his Fidelity account from February 2015 through December 2015.

According to respondent, on March 1, 2016, he received an offer of employment with Catalyst, including an annual salary of $150,000 and an annual sales incentive bonus. When he began receiving this salary, respondent voluntarily wrote additional child-support checks for approximately $1400 per month. Respondent testified he withdrew $23,000 from his Fidelity account in March 2016 and bank records show one additional $5000 withdrawal from his Fidelity account in February 2016. No other withdrawals were made from the Fidelity account during this time period." *In re K.L.*, 2018 IL App (4th) 170294-U, ¶¶ 11-16.

¶ 8        Petitioner's exhibits Nos. 4 and 5 contained respondent's 2014 and 2015 tax returns. Respondent testified his 2014 income tax return showed a gross income from 3M stock options of $436,618 and a gross adjusted income of $529,400. Respondent testified his 2015 income tax return accurately reflected $182,188 in wages and salary from his 3M stock options. Respondent agreed his total 2015 income was $289,881.

¶ 9                    B. Trial Court's January 2017 Order

¶ 10        In January 2017, the trial court entered a lengthy written order modifying respondent's child support obligation. The court found a substantial change in circumstances required modification of the 2013 order, which was based on respondent's pension as his only source of income. The court found a change in circumstances based on respondent's March 2016 offer of employment with Catalyst paying an annual salary of $150,000. The court further noted there was a change in circumstances because respondent "ha[d] received income from his exercise of stock distributions."

- 5 -

¶ 11       The trial court addressed the parties' arguments regarding respondent's exercise of his 3M stock options. The trial court made specific findings as to respondent's income for 2014 and 2015 based on respondent's tax returns. In pertinent part, the court's order stated, "[Respondent]'s 2015 tax returns indicate his income was $289,881. [Respondent]'s 2014 tax return shows $436,618 in stock options was received that year. [Respondent]'s gross income in 2014 was $529,400, exclusive of the reimbursement checks he received from Catalyst." The court made an explicit finding that respondent was receiving gains from his exercise of stock options and rejected respondent's argument that the stock options and withdrawals should not be considered income because they were non-recurring and were essentially a cash exchange. The court determined "distributions of previously unvested stock options which vest and result in a gain to the holder" should be included in calculating a child support obligation.

¶ 12       In calculating respondent's guideline child support obligation, the trial court found respondent's income included an annual salary of $150,000 and a pension of $79,716. Additionally, the court found the evidence showed respondent would continue to draw income from his sale of stock. The court's calculations show respondent had a gross monthly income of $30,207, to which the court added $320 in dividends and $6643 from his pension. The court then deducted $16,428 to reach a net monthly income of $20,742. Finally, the court calculated guideline support of $4149 per month.

¶ 13       The trial court found a downward deviation appropriate and ordered respondent to pay $3000 per month for child support. The court further ordered support retroactive to April 1, 2016, which was the first full month of respondent's employment with Catalyst.

¶ 14                                C. Appeal

¶ 15        Petitioner appealed the court's January 2017 order and, in pertinent part, challenged the court's determination of respondent's child-support obligation and the court's refusal to order retroactive child support to the date she filed her petition to modify child support. On appeal, this court addressed mathematical errors in the trial court's January 2017 judgment as follows:

> "The trial court adopted petitioner's position regarding respondent's 'average income from exercise of stock January through April 2016.' Petitioner's written closing argument included the following relevant language calculating respondent's 2016 income: '$150,000 (Catalyst Employment); $111,600 (average stock income based on withdrawals from January through April of 2016); $3,840 (dividends); $17,328 (average three year capital gains); $79,716 (pension).' The court's calculations show all these amounts were added together and divided by 12 to reach respondent's monthly 'salary' of $30,207. The trial court took $30,207 as respondent's gross monthly salary and added $320 in interest and dividends and $6643 from respondent's monthly pension to reach a gross monthly income of $37,170. This was an error because the monthly salary already took into account the annual pension amount of $79,716 and $3840 in dividends. Accordingly, the court essentially double-counted respondent's income from his pension and dividends and those additional amounts should be disregarded. Disregarding these additional

amounts leaves respondent with a gross monthly income of $30,207.

Moreover, our review of the record reveals an error in petitioner's calculation of respondent's average stock income based on withdrawals from January through April 2016. The record shows respondent deposited $28,000 into his Wells Fargo account from his Fidelity account from January through April 2016. This averages out to $84,000 for the entire year, not $111,600, as calculated by petitioner. Although we make no finding as to the propriety of this method of calculating respondent's income from stock options, using this properly calculated average results in a gross monthly income of $27,907. After $16,428 in deductions, respondent's net monthly income was $11,479, which works out to a guideline support minimum of $2295.80. This amount is substantially lower than the $3000 per month the court ordered and almost $2000 lower than the amount the court calculated as guideline support.

Given the disparity between our calculation of guideline support and the trial court's calculations, we conclude the court's child-support modification order must be vacated and the matter must be remanded for further proceedings. The trial court was concerned about the potential windfall to petitioner if it ordered guideline support, child support retroactive to the date the petition

to modify was filed, contribution to childcare expenses, and 20% of respondent's annual bonus. Because the guideline minimum support is substantially lower than the court originally thought, the trial court should have the opportunity to revisit these decisions. On remand, we encourage the trial court to engage in a global recalculation of respondent's income following the filing of the petition to modify support." *In re K.L.*, 2018 IL App (4th) 170294-U, ¶¶ 39-41.

¶ 16 This court further addressed the trial court's refusal to award child support retroactive to the filing of the petition to modify. The record showed respondent was receiving income from his stock distributions before the filing of the petition to modify and throughout the pendency of the matter. This court noted the inherent inconsistency in the court's decision to award retroactive child support for the period between March 2016 and the January 2017 order based on respondent's salary from Catalyst and on his income from stock distributions, but not to award retroactive support for the period between the filing of the petition to modify and March 2016 when he was receiving income from stock distributions. This court remanded the matter to the trial court for further proceedings.

¶ 17 D. Proceedings on Remand

¶ 18 On remand, the parties filed briefs and petitioner argued this court erred in calculating respondent's net income because it did not reduce the federal, state, and social security deductions based on our finding of respondent's lower gross monthly income. Petitioner argued that "a properly calculated Fin Plan using the Appellate Court's gross monthly income calculation of $27,907 results in [respondent]'s net monthly income as $18,772."

Respondent argued the court had discretion to reverse its prior ruling that the full amount of his income identified in his tax returns was income for child-support purposes. Respondent argued the use of the income listed in "box 1" of respondent's W-2 was improper because it included costs respondent clearly paid to the stock issuer company.

¶ 19    In September 2018, the trial court held a hearing on these matters. At the outset, the parties agreed no further evidence was necessary and only legal arguments were needed. Petitioner argued the trial court should use this court's calculation for respondent's 2016 gross income and then apply the deductions applicable to that lower income. Petitioner further argued that respondent's argument that his stock options should not be considered income should not be considered on remand because he failed to file a cross-appeal raising the issue.

¶ 20    Respondent argued this court's mandate gave the trial court discretion to revisit the determination that his exercise of stock options produced income for the purposes of determining child support. Respondent further argued the trial court should interpret specific portions of respondent's tax returns to conclude he did not earn income from the exercise of his stock options or earned substantially less than the court's previous calculations. Counsel argued respondent "did not get $436,618, his Box 1 W-2 income for 2014." The trial court noted it had made specific findings as to respondent's 2014 and 2015 income, which respondent did not appeal. Respondent again argued this court's mandate allowed the trial court to revisit its decisions regarding income from stock options on remand. In response, the trial court asked, "if the [appellate] [c]ourt is directing me to conduct a global recalculation of child support, don't you think the [c]ourt would have said don't use his stock income as it's nonrecurring?" The court further noted this court recognized the trial court's finding that respondent's exercise of his

stock options produced income and remanded for a recalculation after identifying a different error.

¶ 21    The trial court entered a written order addressing the calculation of respondent's income and the issue of retroactive child support. The court first acknowledged respondent again argued his stock distributions were not income because it was non-recurring income. The court again rejected this argument for the same reasons set forth in its January 2017 order. The court further addressed respondent's argument that specific portions of respondent's tax returns should be examined to conclude respondent was not earning income from the exercise of his stock options. The court rejected this argument as well, finding the exercise of his stock options constituted income for the purposes of calculating support. The court adopted petitioner's proposed calculations of respondent's income taken from respondent's income tax returns. The court determined a downward deviation remained appropriate.

¶ 22    The trial court further found a change in circumstances existed at the time petitioner filed the petition to modify child support and ordered retroactive support to September 2014. The court noted respondent began earning a salary from Catalyst in March 2016 but possessed enough means to justify an increase of support retroactive to September 2014. Based on respondent's income tax returns and petitioner's calculations, the court concluded the following child support obligations were appropriate: from September 24, 2014, to December 31, 2014, respondent was obligated to pay $4535.68 per month; from January 1, 2015, to December 31, 2015, respondent was obligated to pay $2585.28 per month; and from January 1, 2016, and thereafter, respondent was obligated to pay $2901.44 per month.

¶ 23    This appeal followed.

¶ 24                              II. ANALYSIS

- 11 -

¶ 25        On appeal, respondent argues the trial court erred by (1) ignoring this court's

mandate to recalculate respondent's income, (2) awarding retroactive child support in amounts

not supported by the evidence or applicable law, and (3) interpreting this court's mandate as

depriving the trial court of discretion in awarding retroactive child support.

¶ 26                        A. Respondent's Child Support Obligation

¶ 27        Respondent first contends the trial court erred by ignoring this court's mandate to

recalculate his income for a determination of his child support obligation.  Specifically,

respondent argues the trial court ignored this court's calculation of guideline support of $2295.80

per month.  Alternatively, if this court did not in fact determine respondent's income, respondent

argues the trial court erred in ignoring evidence of respondent's income from stock options.

¶ 28                                1. *Standard of Review*

¶ 29        "The findings of the trial court as to net income and the award of child support are

within its sound discretion and will not be disturbed on appeal absent an abuse of discretion." *In

re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 675, 840 N.E.2d 694, 700 (2005).  Following

remand, the tribunal must exercise its discretion within the bounds of remand and whether it has

done so is a question of law.  *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52, 781

N.E.2d 1072, 1078 (2002).  There are two different standards of review applicable to two distinct

issues in this case.  The first issue is whether our mandate required the trial court to accept our

calculation of respondent's income.  This is a question of law we review *de novo*.  *Id.* at 352. If

this question of law is answered in the negative—that is, if the trial court had discretion to

determine respondent's income on remand—we then consider whether the trial court abused its

discretion in determining respondent's income.  *Id.*  We will find an abuse of discretion only

where no reasonable person would take the view adopted by the trial court. *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 22, 17 N.E.3d 678.

¶ 30                                    2. *Scope of Remand*

¶ 31        "Where the reviewing court's directives are specific, the court to which a cause is remanded is under a positive duty to enter an order or decree in accordance with the directions contained in the mandate; precise and unambiguous directions in a mandate must be obeyed." *Ertl v. City of De Kalb*, 2013 IL App (2d) 110199, ¶ 21, 39 N.E.3d 15. However, if the reviewing court does not give specific directions the court to which the cause is remanded must examine the reviewing court's opinion and proceed in accordance with the views expressed. *Id.*

¶ 32        Respondent argues this court's directive was specific and his child support should have been set at $2295.80 in accordance with this court's calculations in the first appeal. Petitioner asserts this court's remand instructions were general and allowed the trial court to exercise its discretion in calculating respondent's income on remand.

¶ 33        In the first appeal in this case, this court discovered two mathematical errors in the trial court's original calculation of respondent's income. Although this court made an independent calculation and determined the resulting child support obligation was significantly lower than the trial court's calculation, this court did not specifically require the trial court to accept our numbers. Instead, this court ruled as follows:

> "Given the disparity between our calculation of guideline
> support and the trial court's calculations, we conclude the court's
> child-support modification order must be vacated and the matter
> must be remanded for further proceedings. The trial court was
> concerned about the potential windfall to petitioner if it ordered

- 13 -

guideline support, child support retroactive to the date the petition to modify was filed, contribution to childcare expenses, and 20% of respondent's annual bonus.  Because the guideline minimum support is substantially lower than the court originally thought, *the trial court should have the opportunity to revisit these decisions*.  On remand, *we encourage the trial court to engage in a global recalculation of respondent's income* following the filing of the petition to modify support." (Emphases added.)  *In re K.L.*, 2018 IL App (4th) 170294-U, ¶ 41.

This language was intended to allow the trial court to exercise its discretion in recalculating respondent's income on remand.  Nothing in the order remanding the matter to the trial court required the trial court to accept our calculations.  Indeed, petitioner filed a petition for rehearing that raised this court's use of an erroneous deduction which we denied because our order contemplated the trial court addressing such claims.  The trial court was in a better position to assess petitioner's claim and make findings of fact as to the proper deductions to be taken from the lower income calculation.  Our calculations were made only to determine whether the disparity in guideline support was so great that the trial court should have the opportunity to revisit its decisions considering its concerns about the potential windfall to petitioner.

¶ 34         Accordingly, we conclude our remand did not require the trial court to accept our calculation of respondent's income.  The trial court, therefore, properly exercised its discretion within the bounds of our remand.  *Clemons*, 202 Ill. 2d at 352.  We now turn to consider whether the trial court abused its discretion in recalculating respondent's income.

¶ 35                              3. *Calculation of Respondent's Income*

- 14 -

¶ 36        Respondent asserts the trial court erred by using his income tax returns to determine his gross income for 2014 and 2015. Specifically, respondent argues the income he received from his stock options should be offset by the exercise price of the stock options. Respondent contends the trial court erred by ignoring his arguments as to valuing his income from stock options. Respondent further contends the trial court refused to consider this argument. Finally, respondent argues petitioner made new arguments regarding the valuation of his stock income on remand because she argued the trial court should use respondent's income tax returns to determine his income. Petitioner argues respondent has forfeited this argument because he failed to file a cross-appeal challenging the trial court's determination that respondent received income from his stock options. Petitioner argues the court's prior determination that respondent received income from his stock options was the law of the case and could not be challenged on remand.

¶ 37        We first address respondent's argument that petitioner set forth new arguments on remand and his related complaint that it was unfair for the trial court to refuse to consider the new arguments respondent raised on remand. As an initial matter, we note that at the outset of the hearing the trial court explicitly asked counsel for both parties whether the record was sufficiently complete for the court to resolve the remaining issues on remand. The parties stipulated that no further evidence was necessary and the court could resolve the issues on the record before it. Respondent claims petitioner raised a new argument that respondent's income should be based on his tax returns. However, the record contradicts this argument. In her closing argument before the trial court entered its January 2017 order, petitioner set forth calculations of income based on respondent's 2014 and 2015 tax returns. Only respondent's 2016 income was based on average withdrawals because, at the time of the close of evidence,

respondent had not yet filed his 2016 income tax return. Therefore, petitioner's assertion on remand that the trial court should look to respondent's income tax returns to determine his income for 2014 and 2015 was not a new argument. The only "new" argument petitioner raised on remand was to point out this court's calculation was inaccurate because we neglected to recognize a lower deduction based on the reduced monthly income for the 2016 income calculation. As petitioner points out, this "new" argument could only be raised once this court calculated a lower income for 2016.

¶ 38    Respondent also argues the trial court erred by ignoring his assertion that his income from stock options must be offset by the exercise price. Respondent contends the trial court repeatedly cut his counsel off and declined to consider this argument. This is a misleading characterization of the record. Although the trial court occasionally interrupted respondent's counsel to ask questions, the transcript shows the court listened to counsel's lengthy argument. Although the court ultimately rejected this argument, it does not follow that the court violated this court's remand by refusing to consider it. We agree with the trial court and petitioner that this court's remand was to address the mathematical errors identified on appeal. While the trial court had discretion to address those mathematical issues as it saw fit, it was not required to entertain or accept respondent's attempt to revisit the question of whether his stock options constituted income for the purposes of support.

¶ 39    The trial court made specific findings as to respondent's income for 2014 and 2015 based on respondent's tax returns. In pertinent part, the court's order stated, "[Respondent]'s 2015 tax returns indicate his income was $289,881. [Respondent]'s 2014 tax return shows $436,618 in stock options was received that year. [Respondent]'s gross income in 2014 was $529,400, exclusive of the reimbursement checks he received from Catalyst." The

court made an explicit finding that respondent was receiving gains from his exercise of stock options and rejected respondent's argument that the stock options and withdrawals should not be considered income because they were non-recurring and were essentially a cash exchange.

¶ 40    Respondent argues the trial court should not have relied solely on his tax returns to determine his income.  In support, respondent relies on *In re Marriages of Rogers*, 213 Ill. 2d 129, 820 N.E.2d 386 (2004).  In *Rogers*, the supreme court concluded the circuit court was correct to include in the father's "income" annual gifts he received from his parents, even though the gifts were *not* considered income for tax purposes.  *Id.* at 137.  In so holding, the supreme court noted the Internal Revenue Code did not govern the determination of what constitutes income for child support purposes.  *Id.*  This case, unlike *Rogers*, does not involve income that is not subject to taxation by the government.

¶ 41    Here, the trial court conducted a lengthy hearing and considered the parties briefs on remand.  The court recalculated respondent's income as directed by this court's mandate.  In so doing, the court did not abuse its discretion in refusing to accept respondent's argument regarding his income from stock options.  Nor did the trial court ignore this court's mandate by refusing to adopt respondent's position.  The trial court properly determined respondent's income from stock options was income and recalculated respondent's net income from the evidence in the record.  Accordingly, we conclude the court did not abuse its discretion in determining respondent's child support obligation.

¶ 42                          B. Retroactive Child Support

¶ 43    Respondent argues the trial court erred by ignoring this court's mandate by awarding retroactive child support in amounts not supported by the evidence.  Respondent

further argues the trial court erred in interpreting this court's mandate to deprive it of discretion in awarding retroactive child support.

¶ 44 Respondent raises many of the same arguments raised in the first issue in his brief. As discussed above, we have concluded that the trial court did not abuse its discretion in refusing to accept respondent's arguments on remand. The record shows the court carefully considered all the arguments made at the September 2018 hearing and in the parties' extensive briefs on remand. The court rejected respondent's arguments and adopted petitioner's calculations based on evidence in the record. The parties agreed no additional evidence was necessary for the resolution of the issues on remand, and the trial court relied on that evidence. Indeed, we note the court's order carefully considered the relevant time periods adjusting based on the evidence of respondent's income during that time. Accordingly, we conclude the trial court did not abuse its discretion in determining respondent's income for the time period following the filing of the petition to modify and award retroactive support to that date.

¶ 45 Finally, respondent contends the trial court erred in interpreting this court's mandate as depriving it of discretion to award retroactive support. Nothing in the record supports respondent's argument. The trial court never stated it felt compelled to award retroactive support to the date of the petition and it asked both parties to discuss the factors it should consider in making the determination. As noted above, the court also carefully fashioned its award of support to reflect respondent's fluctuating income during the period at issue. Moreover, this court did not compel the trial court to award retroactive support to the date of filing. This court merely noted what appeared to be an inconsistency in the trial court's original order and remanded, in part, for the trial court to reconsider that inconsistency. The court did not abuse its discretion in finding a retroactive award appropriate to the September 2014 filing of the

petition to modify, particularly in light of its explicit finding that respondent had sufficient income to justify a modification of child support at the time of the filing of the petition. Accordingly, we affirm the judgment of the trial court.

¶ 46                                  III. CONCLUSION

¶ 47          For the reasons stated, we affirm the trial court's judgment.

¶ 48          Affirmed.